GAJARSA, Circuit Judge.
This appeal represents the continuing saga of the Zoltek Corporation (“Zoltek”) in its effort to obtain compensation for the alleged infringement of its patent. The specific issue in this appeal is whether the Court of Federal Claims properly allowed Zoltek to amend its complaint and transfer its claim for infringement under 35 U.S.C. § 271(g) against Lockheed Martin Corporation (“Lockheed”) to the United States District Court for the Northern District of Georgia. The trial court allowed the amendment and transfer because it concluded that the requirements of 28 U.S.C. § 1631, the transfer statute, were satisfied. On the facts of this case, however, amendment and transfer were legal error. Moreover, because the error in this case was precipitated in part by this court’s earlier decision in Zoltek Corp. v. United States (“Zoltek III”), 442 F.3d 1345 (Fed.Cir. 2006) (per curiam; Gajarsa, J. concurring; Dyk, J. concurring; Plager, J. dissenting) *1312 we revisit the basis for that decision. Thus, in light of our revisiting of our earlier decision, we (1) reverse the trial court’s decision here allowing amendment of Zoltek’s complaint and transferring the amended complaint to the district court; and (2) we remand the case to the trial court for further proceedings consistent with this opinion.
Background
Zoltek is the assignee of United States Reissue Patent No. 34,162 (the “RE '162 Patent”), entitled “Controlled Surface Electrical Resistance Carbon Fiber Sheet Product.” Claims 1-22 and 33-38 relate to methods of manufacturing carbon fiber sheets with controlled surface electrical resistivity; claims 23-32 and 39-40 are product-by-process claims for the partially carbonized fiber sheets. Zoltek is presently asserting only the method claims, which generally contain two steps: partially carbonizing the fiber starting material and then processing those fibers into sheet products. The carbon fiber products at issue were used in the F-22, a fighter jet, which Lockheed designed and built pursuant to a contract with the Government. The F-22 contains two types of carbon fiber products: silicon carbide fiber mats (“Tyranno fibers”), which are fibrous reinforcing material, and prepregs (“Nicalon fibers”), which are pre-impregnated material typically used in the manufacture of high performance composites. Zoltek Corp. v. United States (“Zoltek /”), 51 Fed.Cl. 829, 831 & nn. 1-2 (2002).
In its original complaint filed in 1996, Zoltek sued the United States under 28 U.S.C. § 1498(a), alleging that, without a license from Zoltek or other lawful right, the claimed invention covered by the RE '162 Patent was infringed because the resulting product was used or manufactured by or for the United States. At that time, Zoltek did not assert any claims against Lockheed. Under § 1498(a),
Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
Section 1498(a) “is more than a waiver of immunity and effects an assumption of liability by the government.” Advanced Software Design Corp. v. Fed. Res. Bank, 583 F.3d 1371, 1375 (Fed.Cir.2009) (quoting Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 344, 48 S.Ct. 194, 72 L.Ed. 303 (1928)).
The United States (“Government”) moved for partial summary judgment arguing that 28 U.S.C. § 1498(c) precluded Zoltek’s recovery for the Government’s use of the method claims. Zoltek I, 51 Fed.Cl. at 830. Section 1498(c) states that “[t]he provisions of this section shall not apply to any claim arising in a foreign country.” The manufacturing of the Tyranno and Nicalon fibers begins in Japan, where the fibers are “partially carbonizfed].” Zoltek Corp. v. United States (“Zoltek II”), 58 Fed.Cl. 688, 690 (2003). The fibers are then imported into the United States, where they are processed into sheets.[1] Id. The Government argued Zoltek’s claim arose in a foreign country and, therefore, its sovereign immunity was not waived.
*1313 The trial court held in Zoltek I that § 1498 “does not [waive the Government’s sovereign immunity as] to all forms of direct infringement as currently defined in 35 U.S.C. § 271.” 51 Fed.Cl. at 837. The trial court, however, did not rule on the Government’s summary judgment motion, but stayed the motion pending additional briefing concerning Zoltek’s ability to assert a claim for a taking of its patent rights under the Fifth Amendment. See id. at 839. It subsequently denied the Government’s motion, holding that Zoltek could assert a takings claim. Zoltek II, 58 Fed.Cl. at 707. Both parties appealed.
In our per curiam opinion, the panel majority reversed the trial court’s ruling that Zoltek could allege patent infringement as a Fifth Amendment taking under the Tucker Act. Zoltek III, 442 F.3d at 1353 (per curiam). In the same opinion, the panel majority affirmed the trial court’s conclusion that Zoltek’s infringement allegations were precluded by § 1498, but — unlike the trial court and the dissent — the majority cited § 1498(a) as the basis for the holding, without reaching the issue of § 1498(c). Id. In doing so, the panel majority relied on NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1316 (Fed.Cir.2005), for the proposition that “direct infringement under section 271(a) is a necessary predicate for government liability under section 1498.” Id. at 1350. Because “a process cannot be used ‘•within’ the United States as required by section 271(a) unless each of the steps is performed within this country,” we held that a § 1498 remedy is foreclosed “where, as here, not all steps of a patented process have been performed in the United States.” Id. (citing NTP, 418 F.3d at 1318). We then remanded the case for further proceedings. Id. at 1353.
On remand, Zoltek sought leave to amend its complaint to add a claim against Lockheed for infringement of the RE '162 Patent’s method claims under 35 U.S.C. § 271(g) and to transfer that claim to the Northern District of Georgia pursuant to 28 U.S.C. § 1631. The trial court explained that it lacked jurisdiction over Zoltek’s claims against the Government based on this court’s holding in Zoltek III and that the Northern District of Georgia would have jurisdiction over Zoltek’s claim for infringement against Lockheed. Zoltek IV, 85 Fed.Cl. at 413, 418.
The trial court rejected the Government’s argument that on the basis of the grant of immunity for contractors provided in § 1498(a), there is no jurisdiction in the Northern District of Georgia. The second paragraph of § 1498(a) states that “the use or manufacture of an invention described in and covered by a patent of the United States by a contractor ... for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.” According to the trial court, “§ 1498(a) only insulates government contractors from suit when the Government can be found liable,” and even if § 1498(a) insulated government contractors from liability, transfer was still proper because § 1498(a) is an affirmative defense and not a jurisdictional bar. Id. at 418-19.
The trial court also found that it was in the interest of justice to transfer the claim because (1) it was plausible that without transfer at least part of Zoltek’s claim for infringement against Lockheed would be time-barred; (2) Lockheed had participated in the suit through discovery beginning in 1997 and was aware that its product was the subject of this litigation; and (3) Zoltek was the first plaintiff to discover “a legislative gap between the definition of infringement under § 1498 and the definition of infringement under § 271.” Id. at 420-21. The trial court thus granted Zoltek leave to amend its complaint. Based *1314 upon the trial court’s determination, Zoltek amended its complaint.
Subsequently, the Court of Federal Claims certified the following controlling question of law to this court for interlocutory appeal: “whether 28 U.S.C. § 1498(c) must be construed to nullify any government contractor immunity provided in § 1498(a) when a patent infringement claim aris[es] in a foreign country.” Zoltek Corp. v. United States, No. 96-cv-166, Dkt. No. 385 (May 14, 2009) (“Certified Order”). This court accepted the appeal explaining that the issues before the court are “whether the trial court should have transferred the case and whether the court should have allowed the complaint to be amended to add Lockheed as a defendant.” Zoltek Corp. v. United States, Misc. No. 903, 2009 WL 3169301, *1 (Fed.Cir. Sept. 30, 2009). We have jurisdiction pursuant to 28 U.S.C. § 1292(d)(2).
Discussion
Under 28 U.S.C. § 1631, transfer is appropriate if (1) the transferor court lacks jurisdiction; (2) the action could have been brought in the transferee court at the time it was filed; and (3) transfer is in the interest of justice. This court reviews the trial court’s grant of a motion to transfer a claim for an abuse of discretion, but issues of law are reviewed de novo. See Rick’s Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1342-43 (Fed.Cir.2008). As we stated in Zoltek III, the issues before the court in this case are purely questions of law. 442 F.3d at 1349. And as we shall explain, the trial court inadvertently erred as a matter of law in authorizing the amendment and the transfer of Zoltek’s claim against Lockheed.
I.
In confronting the question of whether a contractor acting under Government authority could be held liable for patent infringement, in a situation in which we had previously held the Government not liable for the allegedly infringing actions of its contractor, we realized that one of two consequences would result. Either we had to conclude that a patentee’s well-pleaded complaint of infringement in the United States of a United States patent in these circumstances fails to state a cause of action against both the Government and the Government’s contractor, or we would have to override the longstanding understanding of the statutory framework that a contractor working for the Government is immune from individual liability for patent infringement occurring in the course of conducting the Government’s contract.
This caused us to re-examine the premises on which our earlier opinion in Zoltek III was based, and to reconsider the consequences of that opinion. As we shall explain, we have concluded that the change in law effected by this court’s decision in Zoltek III, which limited the scope of § 1498(a) to direct infringement under § 271(a), is in error, and must be corrected. We note that, before arriving at this conclusion, we reviewed the briefs and arguments before the court in the earlier appeal that resulted in the Zoltek III opinion, as well as the trial court’s several opinions and, of course, the briefs and arguments in this phase of the case. Since our reexamination of the case in effect reinstates the Government’s potential liability under § 1498(a) for the infringement alleged in this case, we particularly note that the Government has been an active participant in all phases of the trial and appeals in this case, including oral argument in the present appeal even though the case was nominally between Zoltek and Lockheed Martin.
A.
As explained below, the Zoltek III panel’s limitation of § 1498(a) to infringement *1315 under § 271(a) is inconsistent with the plain language of the statute, and in deciding to limit § 1498(a), the panel misapplied its own case law. That error significantly limits the protection that § 1498(a) provides to government contractors, which, in this case, results in Lockheed having liability for conduct otherwise immunized by § 1498(a). It creates the possibility that the United States’ procurement of important military materiel could be interrupted via infringement actions against government contractors — the exact result § 1498 was meant to avoid. And finally, it vitiates the Congressional scheme, spread across three Titles in the United States Code, see 35 U.S.C. §§ 154(a)(1), 271(g), 19 U.S.C. § 1337, and 28 U.S.C. § 1498, which is meant to give relief to process patent holders when the resulting products of their patented process are used within the United States — -regardless of where the process is practiced.
Before analyzing Zottek Ill’s interpretation of § 1498, we review the history of the adoption of that section. In Schilling-er v. United States, the Supreme Court held that patent infringement was a tort for which the Government had not waived sovereign immunity. 155 U.S. 163, 167-69, 30 Ct.Cl. 480, 15 S.Ct. 85, 39 L.Ed. 108 (1894). Thus, absent conduct by the United States from which a contract to license the patent could be inferred, a patent holder lacked a remedy for infringement by the United States. Id. at 169-71, 15 S.Ct. 85.
In response to the perceived injustice of the Schillinger rule, Congress enacted the precursor to 28 U.S.C. § 1498, which provided:
That whenever an invention described in and covered by a patent of the United States shall hereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner may recover reasonable compensation for such use by suit in the Court of Claims.
Act of June 25, 1910, Pub. L. No. 61-305, 36 Stat. 851 (1910) (“1910 Act”); see also Crozier v. Fried. Krupp Aktiengesellschaft, 224 U.S. 290, 304, 32 S.Ct. 488, 56 L.Ed. 771 (1912) (describing the history of the 1910 Act).
In 1918, the Supreme Court applied the 1910 Act to the issue of patent infringement by government contractors in the course of producing warships during World War I. William Cramp & Sons Ship & Engine Bldg. Co. v. Int’l Curtis Marine Turbine Co., 246 U.S. 28, 38 S.Ct. 271, 62 L.Ed. 560 (1918). Despite the contractor’s construction of warships pursuant to “comprehensively detailed” specifications provided by the Navy, the Court found that the 1910 Act did not shield the contractor from infringement. Id. at 42-43, 38 S.Ct. 271.
Reaction to the Court’s March 4, 1918 decision was swift. On April 20, Acting Secretary of the Navy Franklin D. Roosevelt wrote a letter to the chairman of the Senate Committee of Naval Affairs, stating that the Navy was
confronted with a difficult situation as the result of [the] decision by the Supreme Court affecting the government’s rights as to the manufacture and use of patented inventions, and it seems necessary that amendment be made of the Act of June 25, 1910.... [T]he decision is, in effect, ... that a contractor for the manufacture of a patented article for the government is not exempt ... from injunction and other interference through litigation by the patentee.
A prior decision of the Supreme Court, that in the case of Crozier v. Krupp [224 U.S. 290, 32 S.Ct. 488] had been interpreted as having the opposite meaning, and the department was able up to the time of the later decision, on March 4 *1316 last, to proceed satisfactorily with the procuring of such patented articles as it needed, leaving the matter of compensation to patentees for adjustment by direct agreement, or, if necessary, by resort to the Court of Claims under the . above-mentioned act of 1910. Now, however, manufacturers are exposed to expensive litigation, involving the possibilities of prohibitive injunction payment of royalties, rendering of accounts, and payment of punitive damages, and they are reluctant to take contracts that may bring such severe consequences. The situation promised serious disadvantage to the public interests, and in order that vital activities of this department may not be restricted unduly at this time, and also with a view of enabling dissatisfied patentees to obtain just and adequate compensation in all cases conform-ably to the declared purpose of said act, I have the honor to request that the act be amended by the insertion of a proper provision therefore in the pending naval appropriation bill.
Wood v. Atl. Gulf & Pac. Co., 296 F. 718, 720-21 (D.Ala.1924) (quoting letter). In response to this letter, the 1910 Act was amended to provide
That whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner may-recover owner’s remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture by suit in the Court of Claims.
Act of July 1, 1918, Pub. L. No. 65-182, 40 Stat. 704, 705 (1918) (additions in italics; deletions struck through).
As a result of the amendment, the Government not only waived sovereign immunity for its own unlawful use or manufacture of a patented invention, but, in most cases, assumed liability when its contractors did so. See Richmond Screw, 275 U.S. at 343-44, 48 S.Ct. 194. Moreover, when applicable, the amendment made the specified remedy exclusive. Id. at 344, 48 S.Ct. 194. Indeed, the Supreme Court said:
The purpose of the amendment was to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent and his assigns ... to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word ‘entire’ emphasizes the exclusive and comprehensive character of the remedy provided.
Id. at 343, 48 S.Ct. 194. See also Identification Devices v. United States, 121 F.2d 895, 896 (D.C.Cir.1941); Pollen v. Ford Instrument Co., 108 F.2d 762, 763 (2d Cir.1940).
To the degree that any doubt existed, Congress further clarified the scope of the 1918 amendment by enacting what is now the second paragraph of 28 U.S.C. § 1498(a), which reads:
[T]he use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.
Act of Oct. 31, 1942, Pub. L. No. 77-768, § 6, 56 Stat. 1013, 1014; see also S.Rep. No. 77-1640 (1942) at 1 (stating that the purpose of the second paragraph of § 1498 is “[t]o clarify existing legislation ... with respect to contractors and subcontractors *1317 manufacturing and using inventions for the Government”).
These provisions were codified in their modern form in 1949:
Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the United States Court of [Federal] Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
ij: if: i{:
For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.
Act of May 24, 1949, Pub. L. No. 81-72, § 87, 63 Stat. 89, 102 (“1949 Act”); see also 28 U.S.C. § 1498(a).[2]
As enacted, this could be read to permit suit against the United States for the unlawful use or manufacture of patented inventions abroad, e.g., under foreign patent law. See H.R.Rep. No. 86-624, at 6-7 (1959) (letter from William Macomber, Jr., Assistant Secretary of State). Indeed, at least one plaintiff brought suit in the Court of Claims seeking compensation for such activities. See Yassin v. United States, 76 F.Supp. 509, 511, 513-14 (Ct.Cl.1948). To clarify the scope of § 1498, Congress introduced a geographic limitation, which is now codified at 28 U.S.C. § 1498(c): “The provisions of this section shall not apply to any claim arising in a foreign country.” Act of Sept. 8, 1960, Pub. L. No. 86-726, § 1, 74 Stat. 855, 855; see also H.R.Rep. No. 86-624, at 1. Within that historical framework, we turn to the terms of the statute and their application to this case.
B.
In doing so we find that this court’s holding in Zoltek III, which found liability under 35 U.S.C. § 271(a) to be a predicate to government liability under § 1498, must be corrected because it 1) was contrary to the plain language of § 1498; 2) relied on dicta and a fundamental misreading of the statute; 3) impermissibly rendered subsection (c) of § 1498 inoperative; and 4) caused 19 U.S.C. § 1337(i) to become ineffective while ignoring Congress’s clear intent. Since a panel of this court cannot reverse a prior panel decision, the court sua sponte voted to take Part I-B of this opinion en banc for the limited purpose of vacating the Zoltek III opinion. The active judges, consisting of RADER, Chief Judge, NEWMAN, LOURIE, BRYSON, LINN, PROST, MOORE, O’MALLEY, REYNA, and WALLACH, Circuit Judges, voted to vacate the Zoltek III opinion. DYK, Circuit Judge, dissents from the en banc portion of the opinion. See Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 n. * (Fed.Cir.1999) (reversing prior precedent through an en banc vote on one part of an opinion), abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 *1318 U.S. 23, 28, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001); Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1068 n. 5 (Fed.Cir.1998) (same); Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 876 n. 16 (Fed.Cir.1988) (same).
i.
It is fundamental that “[t]he starting point in every case involving construction of a statute is the language itself.” Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 472, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) (internal quotation marks omitted). Section 1498 waives the United States’ sovereign immunity from suit. Thus, it must be strictly construed in favor of the United States. Blueport Co. v. United States, 533 F.3d 1374, 1378 (Fed.Cir.2008) (citing Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996)). Any ambiguity in the statute must be resolved in favor of immunity. See Lane, 518 U.S. at 192, 116 S.Ct. 2092.
Section 1498(a) allows for suit against the Government “[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right” and provides that government contractors would be immune from suit for such use or manufacture. See 28 U.S.C. § 1498(a). The scope of the Government’s waiver of sovereign immunity thus depends on the meaning of (1) “an invention described in and covered by a patent”; (2) “used or manufactured by or for the United States”; and (3) “without license of the owner [of the patent] or lawful right” to do so. Id. Moreover, this language must be interpreted in accordance with its ordinary meaning in 1910, when Congress enacted § 1498’s precursor. See Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (stating that “unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning” at the time Congress enacted the statute).
The language “described in and covered by a patent” has been part of § 1498 since its precursor was enacted in 1910. See 1910 Act. Based on Supreme Court case law and the Patent Act at the time of the 1910 Act, for an invention to be “described in and covered by a patent,” the invention must be claimed in the patent. See Lehigh Valley R.R. Co v. Mellon, 104 U.S. 112, 119, 26 L.Ed. 639 (1881) (“[T]he scope of letters-patent should be limited to the invention covered by the claim.... ”); see also Patent Act of 1870, 41 Cong. Ch. 230, § 26, 16 Stat. 198, 201 (1870) (“Patent Act of 1870”) (stating that the patent “shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery”). In the intervening years, both the relevant case law and subsequent amendments to the Patent Act are consistent with this understanding of “described in and covered by a patent.”
Moving next to the “used or manufactured” language, we note that at the time the amendment to the 1910 Act was adopted, the Patent Act gave the patentee “the exclusive right to make, use, and vend the ... invention or discovery.” Patent Act of 1870 § 22. The Supreme Court has explained that “make” and “use” were not “technical terms.” Bauer & Cie v. O’Donnell, 229 U.S. 1, 10, 33 S.Ct. 616, 57 L.Ed. 1041 (1913). It stated that “make ... embraces the construction of the thing invented [and t]he right to use is a comprehensive term and embraces within its meaning the right to put into service any given invention.” Id. at 10-11, 33 S.Ct. 616. As explained above, the “invention” is what is claimed in the patent. Thus, to “use” an invention, each limitation of the claims must be present in the accused product or process. See Sargent v. Hall *1319 Safe & Lock Co., 114 U.S. 63, 86, 5 S.Ct. 1021, 29 L.Ed. 67 (1885) (holding the defendant did not infringe where its product lacked an element of the asserted claim).
The last phrase we must interpret, “without license of the owner thereof or lawful right,” has also been part of § 1498(a) since the 1910 Act. “Without license of the owner” means simply that the owner has not given the Government a license to use the patented invention. Early variants of the bill that would ultimately become the 1910 Act lacked the requirement that the use or manufacture be “without ... lawful right.” H.R. 7653, 60th Cong., 42 Cong. Rec. 6,164 (1908); S. 7676, 59th Cong., 41 Cong. Rec. 1,344 (1907). Congress added the requirement in order to make clear that the United States would not be liable for manufacturing or using inventions created by its employees in the course of their employment, a lawful shop right under then-existing law. See H.R.Rep. No. 61-1288, at 3-4 (1910) (citing Solomons v. United States, 22 Ct.Cl. 335, 1800 WL 1689 (1887), aff'd, 137 U.S. 342, 26 Ct.Cl. 620, 11 S.Ct. 88, 34 L.Ed. 667 (1890)); 45 Cong. Rec. 8,757 (1910). Of course, the words of the limitation are not confined to the Government’s shop rights. Instead, they carve out from the Government’s assumption of liability all lawful uses, i.e. all uses which are not covered by the scope of the patent grant. See United States v. Palmer, 128 U.S. 262, 271-72, 24 Ct.Cl. 525, 9 S.Ct. 104, 32 L.Ed. 442 (1888) (noting that a patent grants a monopoly against citizen and Government alike, but questioning the availability of a remedy for infringement by the United States); W.L. Gore & Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1283 (Fed.Cir. 1988) (Rich, J.) (stating that a patent is a grant of the right to exclude others from violating the patent grant in Title 35, but § 1498 modifies the grant so the Government may use what it needs), abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391-94, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). In short, lawful right refers to the United States’ right to use or manufacture an invention — without liability under § 1498 — in all cases where other unlicensed parties can do so without directly infringing a patent. See Garlock, 842 F.2d at 1283 (“The government has graciously consented ... to be sued ... for what would be infringement if by a private person.”).
Thus, § 1498(a) waives the Government’s sovereign immunity from suit when (1) an invention claimed in a United States patent; (2) is “used or manufactured by or for the United States,” meaning each limitation is present in the accused product or process; and (3) the United States has no license or would be liable for direct infringement of the patent right for such use or manufacture if the United States was a private party. Section 1498 makes no reference to direct infringement as it is defined in § 271(a). Indeed, so interpreting § 1498(a) is contrary to its plain language, interpreted in light of the meaning of that language in 1910.
ii.
Moreover, the panel majority’s per curiam interpretation of § 1498(a) in Zoltek III was rooted in a fundamental misreading of the statute. The panel failed to rely on the plain language of the statute, but premised its conclusion on NTP, Inc. v. Research in Motion, Ltd., which stated that “direct infringement under section 271(a) is a necessary predicate for government liability under section 1498.” 418 F.3d 1282, 1316 (Fed.Cir.2005) (citing as authority a footnote in Motorola, Inc. v. United States, 729 F.2d 765, 768 n. 3 (Fed. Cir.1984)). However, NTP did not involve the United States as a party and was interpreting 35 U.S.C. § 271(a), not 28 *1320 U.S.C. § 1498; the court referred to § 1498(a) only to provide a framework for analyzing § 271(a). See id. at 1315-16 (interpreting “use within the United States” under 271(a)). Therefore, this court’s statement in NTP regarding the scope of § 1498 was not a holding of the case and accordingly such dictum is not binding.
NTP itself was relying on dictum from Motorola when it referred to § 1498(a). In Motorola, this court cited to Decca Ltd. v. United States, 640 F.2d 1156, 1167 (Ct. C1.1980) and stated that “the Government can only be sued for any direct infringement of a patent (35 U.S.C. § 271(a)), and not for inducing infringement by another (section 271(b)) or for contributory infringement (section 271(c)).” 729 F.2d at 768 n. 3. However, in 1984, § 271(g) had not been enacted and § 154(a)(1) did not include the right to exclude others from using products made by a patented process — statutory provisions that were not implemented until 1988. Process Patents Amendment Act of 1988 (“PPAA”), P.L. 100-418, §§ 9002, 9003, 102 Stat. 1107, 1563-64 (1988). Therefore, at that time it was logical to use those sections of Title 35 to illustrate the idea that § 1498 requires direct infringement and does not apply to indirect infringement. But using § 271(a) as shorthand to define direct infringement under § 1498 was not a holding of the case and did not reflect Motorola’s holding, which was that § 1498 did not incorporate 35 U.S.C. § 287. Motorola, 729 F.2d at 769. Tellingly, that statement appeared in a footnote listing some of the several differences between a § 1498 action and one under Title 35. Id. at 768 n. 3.
In Decca, the Court of Claims, our predecessor court, concluded that § 1498(a) did not waive the Government’s sovereign immunity for indirect infringement under 35 U.S.C. § 271(b) and (c). 640 F.2d at 1169-70. Decca did not hold, as Motorola assumed, that § 1498(a) is synonymous with infringement under § 271(a). Rather, the court “h[e]ld that 35 U.S.C. § 271(b) and (c) are not incorporated by implication in [§ ] 1498.” Id. at 1170. The court explained that inducement and contributory infringement are outside § 1498(a) because they “do not involve the Government’s making or using a patented invention....” Id. at 1170 & n. 31 (emphasis added). In coming to this conclusion, the court recognized the importance of the language in § 1498(a), which is limited to inventions that are “used or manufactured by or for the United States.” The court stated simply:
Because section 1498 is an eminent domain statute, the Government has consented there under only to be sued for its taking of a patent license. Expressed differently, section 1498 is a waiver of sovereign immunity only with respect to a direct governmental infringement of a patent. Activities of the Government which fall short of direct infringement do not give rise to governmental liability because the Government has not waived its sovereign immunity with respect to such activities. Hence, the Government is not liable for its inducing infringement by others, for its conduct contributory to infringement of others, or for what, but for section 1498, would be contributory (rather than direct) infringement of its suppliers. Although these activities have a tortious ring, the Government has not agreed to assume liability for them. In short, under section 1498, the Government has agreed to be sued only for its direct infringement of a patent.
Id. at 1167. Nothing in that statement can be read to mean that § 1498 requires as a predicate liability under § 271(a). In fact, that statement indicates that any direct infringement that would normally require a license by a private party falls under § 1498. Therefore, we are not mandated *1321 by NTP, Motorola, or Decca to conclude that direct infringement under § 1498 equates to direct infringement under § 271(a).
iii.
Furthermore, Zoltek Ill’s limitation of § 1498(a) to § 271(a) renders § 1498(c) superfluous, violating the canon of statutory construction that “a statute should be interpreted so as not to render one part inoperative.” CSX Transp., Inc. v. Ala. Dep’t of Revenue, —U.S.-, 131 S.Ct. 1101, 1111, 179 L.Ed.2d 37 (2011) (citation and internal quotation marks omitted). Section 271(a) requires that the infringing activity occur “within the United States.” (emphasis added). Yet § 1498(c) provides the exact same limitation by eliminating the Government’s liability “for a claim arising in a foreign country.” By limiting § 1498(a) to activities within the United States, the panel in Zoltek III rendered § 1498(c) superfluous. Section 1498(c), however, is not superfluous. Congress specifically added this section to 28 U.S.C. § 1498 to ensure that the Government would not be held liable for claims arising abroad. See H. Rep. No. 86-624, at 5-6 (1959).
Thus, when the panel in Zoltek III concluded that the Government’s liability under § 1498(a) is limited to infringement under § 271(a), it was relying on dictum as expressed by NTP, and not the tools of statutory construction. The plain language of § 1498(a) indicates that § 1498(a) operates independently from Title 35. Indeed, this court so held in Motorola, where we said that “[although a section 1498 action may be similar to a Title 35 action, it is nonetheless only parallel and not identical.” Motorola, 729 F.2d at 768. Instead of relying on any infringement sections in § 271, § 1498(a) creates its own independent cause of action.
iv.
Finally, Zoltek Ill’s interpretation of § 1498 eliminated the effect of 19 U.S.C. § 1337(i) even though “[w]e must read the statutes to give effect to each if we can do so while preserving their sense and purpose.” Watt v. Alaska, 451 U.S. 259, 267, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) (citing Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). Zoltek III negated Congress’s clear intent to protect products resulting from a patented process, wherever practiced, when it rendered § 1337(Z) ineffective, thereby limiting the remedies of parties in situations similar to Zoltek’s.
Title 19 U.S.C. section 1337 allows process patent holders to petition the International Trade Commission to exclude the
importation into the United States, ... or the sale within the United States after importation by the owner, importer, or consignee of articles that ... are made, produced, processed, or mined under, or by means of, a process covered by the claims of a valid and enforceable United States patent.
19 U.S.C. § 1337(a)(1)(B)(ii). Therefore, subject to the other requirements of § 1337, Zoltek could at least prevent the importation of products made by its patented process. However, under § 1337(Z), entitled “Importation by or for United States,”
[a]ny exclusion ... in cases based on a proceeding involving a patent, ... under subsection (a)(1) of this section, shall not apply to any articles imported by and for the use of the United States, or imported for, and to be used for, the United States with the authorization or consent of the Government.
Thus, when products resulting from a patented process are imported for the United States, such as by a government contractor, the process patent owner cannot ex-
*1322 elude the products from entering the United States. However, in the same subsection, Congress gave process patent owners in such a predicament a remedy: Whenever any article would have been excluded from entry ... but for the operation of this subsection, an owner of the patent ... adversely affected shall be entitled to reasonable and entire compensation in an action before the United States Court of Federal Claims pursuant to the procedures of section 1498 of Title 28.
19 U.S.C. § 1337(i). Based on the plain language of § 1337, Congress clearly intends that patent holders shall have a remedy under 28 U.S.C. § 1498 for the importation of products made by a patented process if the products could have been excluded under § 1337. By continuing to require § 271(a) liability as a predicate for liability under § 1498(a), Zoltek III, relying on the perpetuation of the dictum in NTP, disturbed Congress’s statutory scheme and intent. See S.Rep. No. 93-1231, at 1999 (1974) (commenting on the purpose of subsection (i), later redesignated as subsection (l), and stating that “Any patent owner adversely affected by this subsection would be entitled to reasonable and entire compensation pursuant to 28 U.S.C. 1498.[sic]” (emphasis added)).
Title 35 U.S.C: section 271(a) does not protect against the importation of products made by a patented process, but § 271(g) states that “[wjhoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer.” Because § 1337 unambiguously asserts Congress’s intent to give process patent owners a remedy for importation of products made using their process, it would be incorrect to maintain Zoltek III’s holding that § 271(a) infringement is a predicate to United States liability under § 1498. If Zoltek III is correct, a process patent holder who requests a § 1337 exclusion order from the International Trade Commission to prevent the importation of articles to be used by or for the United States will be denied such relief by operation of § 1337(i). But the patentee will be directed to obtain “reasonable and entire compensation” from the United States, which he “shall” be entitled to in the Court of Federal Claims under § 1498. See § 1337(i). However, under Zoltek III, the patentee will be denied relief because his claim cannot be predicated on § 271(a). Zoltek III vitiated the effect of 19 U.S.C. § 1337(i), and as explained above, it relied on dicta to refute the plain language of 28 U.S.C. § 1498(a) and render superfluous 28 U.S.C. § 1498(c). Therefore, that opinion is vacated by the court en banc.[3]
II.
While this court in Zoltek III was incorrect when it determined that infringe *1323 ment under § 271(a) is a predicate for Government liability under § 1498(a), we must now determine as a matter of law whether Lockheed’s actions create Governmental liability under § 1498(a). Under § 271(g), Lockheed allegedly infringed Zoltek’s patents when it used in the United States, or imported into the United States, the product made using the patented process. 35 U.S.C. § 271(g). The issue is whether that act falls under § 1498(a), thus giving Lockheed immunity from suit and Zoltek the right to compensation from the Government. To be within the parameters of § 1498(a), Lockheed must have used the invention without a license and without lawful right. Lockheed clearly was not licensed to practice Zoltek’s invention. Therefore, the issue is whether they had the lawful right to do so. As explained above, we have defined “without lawful right” for purposes of § 1498(a) as use of an invention that, if done by a private party, would directly infringe the patent. The liability of the United States under § 1498 is thus linked to the scope of the patent holder’s rights as granted by the patent grant in title 35 U.S.C. section 154(a)(1). As the patent grant has expanded over the years, so too has the coverage of § 1498(a). If a private party had used Zoltek’s patented process to create the resulting product, there would be liability for infringing Zoltek’s patent right under § 154(a)(1) and § 271(g). We hold that the Government is subject to the same liability in this case, and that precedent and legislative intent dictate that result.
A.
In Quanta Computer, Inc. v. LG Elecs., Inc., the Supreme Court held that in the patent exhaustion context, “methods ... may be ‘embodied’ in a product.” 553 U.S. 617, 628, 128 S.Ct. 2109, 170 L.Ed.2d 996 (2008). The holding was necessary to avoid “an end-run around exhaustion” where “[patentees seeking to avoid patent exhaustion could simply draft their patent claims to describe a method rather than an apparatus.” Id. at 629-30, 128 S.Ct. 2109. This concept was not applied to 35 U.S.C. § 271(f) in Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., because method patents do not have physical components that could be combined outside the United States as prohibited by § 271(f). 576 F.3d 1348, 1364 (Fed.Cir.2009) (en banc). That does not mean, however, that the concept is not applicable under § 1498 because §§ 154(a)(1), 271(g), and 1498(a) are applicable to process patents. Although the process itself was partially practiced outside the United States in this case, the product resulting from the practice, which embodies the patented process, was imported into, or used in, the United States. Therefore the process has been “used” without a license or lawful right. A contrary result would similarly avoid infringement by the United States. Additionally, contractors could practice the processes overseas whereby the resulting product would be immunized from exclusion from importation under § 1337.
To allow such a result is contrary to the PPAA’s legislative history, which reflects the understanding that to protect process patents is to protect the products resulting from the process. Although “use” of the invention “without lawful right” does not use the exact same terms as § 271(g), we can look to Judge Learned Hand for guidance. He notes that, “Courts have not stood helpless in such situations; the decisions are legion in which they have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute.” Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.1945) (citing Justice Holmes for the proposition that “it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall *1324 go on as before.” Johnson v. United States, 163 F. 30, 32 (1st Cir.1908)). The Supreme Court approvingly quoted Judge Learned Hand in Cabell and said:
Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.
Watt v. Alaska, 451 U.S. 259, 266 n. 9, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) (quoting 148 F.2d at 739).
As explained above, the plain language of the statute is clear. Additionally, the legislative purpose behind § 1498 is clear. The Supreme Court has stated that § 1498(a) was meant to “relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government” in order “to stimulate contractors to furnish what was needed for the war, without fear of becoming liable themselves for infringements .... ” Richmond Screw, 275 U.S. at 343-45, 48 S.Ct. 194. This purpose survives today.
In 1988, the patent grant under § 154(a)(1) was expanded to state “if the invention is a process,” the patent shall contain a grant to the patentee, his heirs or assigns, “of the right to exclude others from using or selling throughout the United States, or importing into the United States, products made by that process.” PPAA § 9002. Section 271(g) was also added at that time to clarify that violating this right is an act of infringement. § 9003. Section 154(a)(1) was modified, and section 271(g) was adopted, by Congress because “[i]n order to make patent protection of a process meaningful, it is ... necessary to consider the patented process and the resulting product as a whole, with the consequence that process protection is automatically extended to the resulting product even if the said product has not been claimed.” S.Rep. No. 100-83, at 31 (1987) (citations omitted and emphasis added).
The purpose supporting the changes was to harmonize United States law with that of the rest of the industrialized world, in which “most countries’ patent laws are structured so that the direct product of a patented process is also included within the scope of the patent.” Id.; accord H. Rep. No. 100-60, at 4 (1987). Congress noted that previously, “[wjith respect to process patents, courts have reasoned that the only act of infringement is the act of making through the use of a patented process; therefore, there can be no infringement if that act occurs outside the United States.” H. Rep. 100-60, at 5 (1987) (citations omitted). Congress then noted that “this rationale is not adequate because it ignores the reality that the offending act is the importation of a product made through the use of a protected process patent or its subsequent sale within the United States.” Id. at 6 (emphasis added).
Thus, because the scope of the Government’s “lawful right” to “use” the invention under § 1498(a) is determined by the scope of § 154(a)(1), Congress’s expansion of the patent grant makes § 1498(a) cover the use of a product that incorporates the patented process by which it was created. We agree with the argument made by the Federal Circuit Bar Association in its amicus brief that no revision to § 1498(a) was necessary to reach this result; it was accomplished by the expansion of the patent grant. Amicus Brief of the Fed. Cir. Bar Ass’n at 14.
*1325 We recognize that this “court may not read an amendment to one section of a statute as an amendment to an entirely different section of the statute in the absence of any statutory justification.” Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1258 (Fed.Cir.2000). In Rotee, we analyzed an amendment to 35 U.S.C. § 271(a) and determined that it did not apply to § 271(f). Id. at 1257-58. It would seem that Rotee’s rule would be especially applicable here since it may appear that we have determined that the amendment of one statute is an amendment to a completely different statute, rather than simply different sections of the same statute. But, in this case, as explained above, there is compelling statutory justification for such an interpretation. However, such a justification is not even necessary because “lawful right” is linked to the scope of the patent grant; we are not amending the meaning of lawful right — that was done by Congress. We are simply stating the effect the amendment to the patent grant had on § 1498(a), which is defined by its terms and the patent grant.
Therefore, based on clear Congressional intent to protect contractors from infringement so that the Government’s important business may not be disturbed, it would be absurd to find that the importation or use of a product created through the use of a patented process as prohibited by 35 U.S.C. §§ 154(a)(1) and 271(g) fails to be the equivalent of use of the invention without lawful right to do so.
This is illustrated by a simple example. Had Lockheed practiced the process overseas without bringing the resulting products back to the United States, there would be no direct infringement of Zoltek’s patent rights under § 271(a) or (g). Additionally, Zoltek would have no remedy against the Government under § 1498. As held in NTP, there would be no infringement under § 271(a) because all steps of the patented process were not carried out “within the United States.” 418 F.3d 1282, 1318. There would be no § 271(g) infringement because none of the products made using the patented process were ever present in the United States as required by the statute. 35 U.S.C. § 271(g). Additionally, as explained below, the Government would not have waived its sovereign immunity under § 1498 because § 1498(c) states that the section does not apply to claims arising in a foreign jurisdiction, and a claim arising from an act which has no connection to the United States arises overseas. Essentially, as long as the products made by the patented process overseas are not imported into, or used within, the United States, Lockheed has the lawful right to use the patented process under § 1498(a) because the “within the United States” requirements of §§ 154(a)(1), 271(a), and 271(g) are not met, and § 1498(c) is implicated by the claim arising outside the jurisdiction of the United States.
When it imported the resulting products into the United States, or used them within the United States, Lockheed used Zoltek’s patented invention “without license of the owner thereof or lawful right to use or manufacture the same ...” because it is the act of importation or use in the United States of the products made by the patented process that constitutes improper use of a patented invention. As explained, the products themselves embody the patented invention for the purposes of § 1498. It could be argued that importing the resulting products is not the same as “use” of the invention under the literal terms of § 1498 because the process itself is the invention, not the resulting products. In light of the modification, however, of the patent grant (§ 154(a)(1)) and adoption of 35 U.S.C. § 271(g), and considering the effect of Congress’s mandate in 19 U.S.C. *1326 § 1337(Z), in the context of § 1498, the product of a patented process is not only the product, but also the physical embodiment of the invention. Therefore, Lockheed’s actions constitute use of the invention without lawful right under the terms of § 1498(a).
B.
We must now determine whether 28 U.S.C. § 1498(c) applies to this case. Section 1498(c) states that “[t]he provisions of [§ 1498(a) ] shall not apply to any claim arising in a foreign country.” The partially carbonizing step used to make the products alleged to infringe the RE '162 Patent occurs in Japan, while the processing step occurs in the United States. Thus, the question here is whether a claim “aris[es] in a foreign country” when one step of the claimed method is performed in a foreign country and another step is performed in the United States.
Congress amended § 1498 to add subsection (c) in 1960. Pub. L. 86-726, § 1, 74 Stat. 855, 856 (1960) (adding copyrights to the scope of § 1498). Congress wanted “to avoid liability for claims arising out of infringements of patents or copyrights in a foreign country.” S.Rep. No. 86-1877, at 5 (1960), 1960 U.S.C.C.A.N. 3444, 3449. Indeed, the plain language of § 1498(c) eliminates Government liability for claims “arising in a foreign country” not claims arising under foreign law. Section 1498(c) was adopted “to remove the possibility of [the bill] being interpreted as applying to acts of infringement in foreign countries.” Id. at 7.
However, in this case, § 1498(c) does not exempt the United States from liability because the infringing acts — use or importation of the products resulting from the process — occurred in the United States. Importation occurs when the product crosses the United States’ border, and use occurs within the United States. Both of those acts occur within the United States and any claim regarding those acts similarly arises within the United States. There is no infringement in a foreign country because the patent grant and the infringement statutes do not cover activities that occur outside the United States. See 35 U.S.C. §§ 154(a)(1), 271. Because the resulting products were imported or used in the United States, Zoltek’s claim for relief does not “arise” in a foreign country and § 1498(c) does not apply to this case. This conclusion is supported by precedent; the legislative histories of section 154(a)(1)’s modification and the enactment of section 271(g); and Congress’s intent to create a comprehensive scheme meant to protect contractors, inventors, and the United States.
Accordingly, we hold that for the purposes of section 1498, the use or importation “within the United States [of] a product which is made by a process patented in the United States” constitutes use of the invention without lawful right because the products embody the invention itself. We add that nothing in this opinion should be construed to affect our Title 35 jurisprudence.
Summary
In its original suit before the Court of Federal Claims, Zoltek alleged infringement by the Government of its patent, and a right to recover compensation therefore by virtue of 28 U.S.C. § 1498(a). The trial court ruled for the Government on the § 1498 issue on the basis of its understanding of § 1498(c) as applied to these facts, but permitted Zoltek’s case to go forward on its theory of a taking of its patent rights under the Fifth Amendment. We now hold:
1. 28 U.S.C. § 1498(a) creates an independent cause of action for direct infringement by the Government or its contractors *1327 that is not dependent on 35 U.S.C. § 271(a). Direct infringement under § 1498(a) comes within the scope of the right to exclude granted in 35 U.S.C. § 154(a)(1). Thus, under § 1498(a) the Government has waived its sovereign immunity for direct infringement, which extends not only to acts previously recognized as being defined by § 271(a) but also acts covered under § 271(g) due to unlawful use or manufacture. Therefore, as in this case, when the product of a patented process is used in, or imported into, the United States by or for the United States, there is direct infringement for the purposes of a § 1498 action. We do not decide the issue of indirect infringement, under § 271(b), (c), and (f), which is not before us. Zoltek has filed a complaint with wellpleaded allegations against the Government for infringement under § 1498(a). The trial court’s holding to the contrary is reversed, and the case is remanded for further proceedings in accordance with this opinion;
2. Properly understood, § 1498(c) has no application to the facts of this case in which a United States patent was allegedly infringed by activities that took place within the United States. Thus § 1498(c) does not bar Zoltek’s suit against the Government. The trial court’s holding to the contrary is reversed;
3. When the United States is subject to suit under § 1498(a) for alleged infringement of a patent by a contractor acting by and for the United States, the contractor by law is rendered immune from individual liability for the alleged infringement. The trial court’s holding to the contrary on appeal in this case is reversed; and
4. Since the Government’s potential liability under § 1498(a) is established, we need not and do not reach the issue of the Government’s possible liability under the Constitution for a taking. The trial court’s determinations on that issue are vacated.
Conclusion
REVERSED IN PART, VACATED IN PART, AND REMANDED
Costs
No costs.

. In Zoltek III, this court stated that the Nicalon fibers were manufactured and formed into sheet products in Japan. 442 F.3d at 1349. This statement was contrary to the facts as found by the trial court, see Zoltek Corp. v. United States ("Zoltek IV"), 85 Fed.Cl. 409, 411 n. 1 (2009), and we correct it here.

. The statute was first codified as 35 U.S.C. § 68 (1926). The re-codification at 28 U.S.C. § 1498 substantially altered the text. See Act of June 25, 1948, Pub. L. No. 80-773, 62 Stat. 869, 941 (1948) (enacting into positive law as 28 U.S.C. § 1498). The codified text was revised shortly thereafter to "restate[] its first paragraph to conform more closely with the original law.” H.R.Rep. No. 81-352, at 11 (1949), 1949 U.S.C.C.A.N. 1254, 1269; see also 1949 Act § 87. The 1949 Act is identical to the current text of the first sentence of 28 U.S.C. § 1498(a), with the exception of the name of the Court of Federal Claims.

. The dissent contends that this court lacks jurisdiction to address the question whether section 1498(a) is limited to infringement un-der 35 U.S.C. § 271(a), because that question is not within the scope of the order on appeal. In fact, however, the transfer order that is the subject of this appeal was predicated in part on the trial court’s conclusion that it lacked jurisdiction over the claim before it, see 28 .U.S.C. § 1631, and that conclusion followed from the trial court’s application of this court's earlier decision in Zoltek III. This court's act of vacating Zoltek III thus directly affects the transfer order that is on appeal here. For that reason, this case is entirely different from United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), on which the dissent relies, in which the court of appeals improperly addressed an entirely different theory of liability from the one at issue in the order on appeal. With respect to the substantive objections raised by Judge Dyk, he reiterates the same rationale he espoused in his concurrence in Zoltek III, which is still not mandated by the dicta of the cases upon which he relies.