Joseph JOHNSON, Jr., Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION, et al., Defendants.

Civil Action No. 07–2183(JR).

United States District Court, District of Columbia.

Sept. 30, 2008.

Joseph Johnson, Jr., Oxon Hill, MD, pro se.

Claire M. Whitaker, Fred Elmore Haynes, United States Attorney's Office, William Warehime Thompson, Jr., Peckar Abramson Bastianelli & Kelley, Washington, DC, for Defendants.

### MEMORANDUM

JAMES ROBERTSON, District Judge.

Joseph Johnson Jr. brought this case pro se under the Administrative Procedure Act, 5 U.S.C. § 706, and the Higher Education Act, § 20 U.S.C. § 1087, to compel the Secretary of Education and his loan service providers to discharge certain of his federally guaranteed student loans. The parties have cross-moved for summary judgment. Summary judgment will be granted in favor of defendants.

### Background

Johnson was indicted for larceny and burglary on February 16, 1993 and given a suspended sentence on April 21, 1993. Pl. MSJ, ex. 1. That same year he enrolled at the University of Maryland University College (UMUC). AR at 15. He obtained federally guaranteed loans, including Federal Family Education Loans (FFEL), for the Fall 1993, Spring 1994, Fall 1994, Spring 1995, and Spring 1996 semesters. AR at 19. The loan application form did not ask about Johnson's criminal history, and he did not tell. While enrolled, Johnson took several courses offered by UMUC's paralegal studies program. Pl. MSJ, ex. 13. On April 29, 1996, Johnson withdrew from UMUC because he was incarcerated, this time for forgery. AR at 182. In 2004, after his release from prison, Johnson consolidated his loans under the William D. Ford Federal Direct Loan Program (FFDLP). AR at 19–23.

Two years later, Johnson filed the application that gave rise to this case. Pl. MSJ, ex 6. He demanded the discharge of his consolidated loans, asserting that UMUC had falsely certified his application because, as a convicted felon, he was unable to meet the requirements of the occupation for which he was trained.[1] AR at 53. More specifically, Johnson claimed that his criminal record both precluded any possibility of his admission to the bar, and, because he could never be licensed to possess a firearm, his employment in law enforcement. *Id.* This discharge application was rejected on the ground that Johnson did not inform the school that he was a convicted felon before he enrolled at UMUC. AR at 80.4.

---

1. If this argument sounds like the plea of the boy who murdered his parents and then sought leniency because he was an orphan, consider that, after his conviction for forgery,

Johnson filed another application for the discharge of his loans on the ground that his signature was forged. He has not (yet) contested the rejection of that application.

Johnson appealed to the Secretary and simultaneously reapplied for discharge, repeating his earlier assertion and further arguing that UMUC never asked about his criminal history before certifying his loans, and that his criminal record also prevented him from meeting a requirement for employment as a paralegal. AR at 125. A month later, Johnson's second discharge application was rejected, this time on the ground that he failed to provide documentation that he had been denied a license because of his criminal record. AR at 166. Johnson appealed this second decision, too. AR at 228.

The Secretary rejected both of Johnson's appeals on the ground that: "There are no records that indicate you were enrolled in a training program that specifically and exclusively prepared you for employment in law enforcement or as a paralegal, nor were you enrolled in law school." AR at 351. This decision acknowledged that its "basis for determining that [Johnson] would not be eligible for discharge differ[ed] from that provided by" the FFDLP. AR at 352. Johnson applied for reconsideration, attaching evidence that he claimed proved his enrollment in UMUC's paralegal studies program, which he said "specifically and exclusively prepared [him] for employment in the 'legal environment'; more specifically as a paralegal." AR at 353. The Secretary again rejected Johnson's application, this time stating that: "The information you presented was already considered in past determinations of your requests for discharge, including mine. You do not meet the statutory or regulatory requirements for discharge based on False Certification, Disqualifying Status." AR at 356.

Johnson's sues under the APA and seeks to compel the Secretary to discharge his loans because UMUC falsely certified that he would meet the requirements of employment as a paralegal. Both parties have moved for summary judgment.

### Analysis

Summary judgment is granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). It "is an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did." *In Occidental Engineering Co. v. INS,* 753 F.2d 766, 769–70 (9th Cir.1985). Here, the facts in the record are undisputed, and it is the Secretary's decision that is challenged.

The statutory provision in question is 20 U.S.C. § 1087(c)(1): "If a borrower who received, on or after January 1, 1986, a loan made, insured, or guaranteed under this part and ... if such student's eligibility to borrow under this part was falsely certified by the eligible institution ... then the Secretary shall discharge the borrower's liability on the loan (including interest and collection fees)." The regulation that governs the discharge of loans consolidated under the FFDLP is 34 C.F.R. § 685.215(a)(1)(iii): "The Secretary considers a student's eligibility to borrow to have been falsely certified by the school if the school ... [c]ertified the eligibility of a student who, because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended." [2]

---

**2.** Johnson argues that because his loans were FFEL loans before they were consolidated, I

should also consider his "ability to benefit" from his education under 34 C.F.R.

■ The Secretary ultimately rejected Johnson's discharge applications under 34 C.F.R. § 685.215(a)(1)(iii) because there was no evidence that the UMUC program specifically and exclusively prepared him to be a paralegal. AR at 351. My review is restricted to whether this decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ." 5 U.S.C. § 706(2)(A), and is limited to the administrative record. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Generally, an agency's decision is arbitrary and capricious "if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (internal citations omitted). Courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, ⸺ U.S. ⸺, 127 S.Ct. 2518, 2530, 168 L.Ed.2d 467 (U.S.2007) (internal citations omitted).

■ The Secretary's decision was supported by the record. While enrolled, Johnson took several classes offered by UMUC's "Paralegal Studies" concentration. Pl. MSJ, ex. 13. UMUC's 1998–1999 brochure describes this program as preparing students "for challenging and responsible work in the legal environment . . . [and] to apply their acquired knowledge and skills in a wide variety of legal settings," including "law firms, government agencies, legal services offices, corporations, professional and trade associations, banks, real estate organizations, publishing companies, and other public and private sector businesses." AR at 305. According to the Department of Labor, among the many "occupations that call for a specialized understanding of law but do not require the extensive training of a lawyer, are law clerks; title examiners, abstractors, and searchers; claims adjusters, appraisers, examiners, and investigators; and occupational health and safety specialists and technicians." Pl. SMFND ¶ 4. Johnson may have intended to pursue a specialization in "Paralegal Studies," but he has not shown that the Secretary's determination that this program did not specifically and exclusively train students to be paralegals was arbitrary and capricious.

■ The Secretary's decision is indeed consistent with the applicable regulation, which contemplates discharge only for "a student who, because of a . . . criminal record . . . would not meet the requirements for employment . . . *in the occupation* for which the training program supported by the loan was intended." 34 C.F.R. § 685.215(a)(1)(iii) (emphasis added). It is also consistent with an interpretation of that regulation that restricts the availability of loan discharges to students enrolled in programs that provide training for specific occupations with identified requirements.[3] An agency's interpretation

§ 682.402(e)(13)(iii)(A)(B). The "ability to benefit" language, adds nothing material on the facts of this case.

3. *See* 59 Fed.Reg. 61664, 61682 (December 1, 1994):

Comments: One commenter suggested that the language pertaining to the false certification of the eligibility of a student who does not meet the basic requirements for employment is unclear particularly when applied to four year and degree granting institutions. The commenter stated that the school does not have access to the information mentioned in the regulation and cannot be expected to have knowledge of the potential occupations and requirements for

of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (internal citation omitted); *Gulf Oil Corp. v. Hickel,* 435 F.2d 440 (D.C.Cir. 1970).

 "The party challenging an agency's action as arbitrary and capricious bears the burden of proof." *Lomak Petroleum, Inc. v. FERC,* 206 F.3d 1193, 1198 (D.C.Cir.2000). Plaintiff has not sustained his burden. Because the record shows that Johnson was not enrolled in a training program "in which the school proposed to train the student for an occupation with specific requirements for employment," 59 Fed.Reg. 61664, 61682 (December 1, 1994), the Secretary is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

employment for students who pursue the academic programs in a university. The commenter argued that this language would encourage students to raise illegitimate claims against schools. Discussion: The regulatory language is limited and designed to address situations in which the school proposed to train the student for an occupation with specific requirements for employment. The Secretary does not anticipate that this regulation will apply to many students pursuing academic programs in a university.

(emphasis added).