**Joseph JOHNSON, Jr., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 11–898C.**

United States Court of Federal Claims.

May 17, 2012.

Joseph Johnson, Jr., pro se, Fort Washington, Maryland.

Joseph E. Ashman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Sarah Wanner, General Attorney, Office of the General Counsel, United States Department of Education, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff Joseph Johnson, Jr., seeks damages and equitable relief from the United States ("the government") for alleged negligence, violation of the Administrative Procedure Act, and breach of contract by the Department of Education ("the agency") in connection with consolidated educational loans. Pending before the court are two motions. The government has moved to dismiss the case for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, and plaintiff has moved to transfer the case to the United States District Court for the District of Columbia.

## BACKGROUND

Mr. Johnson obtained educational loans to fund his studies at the University of Maryland, University College ("the university"). He attended class at the university from the fall of 1993 to the beginning of the spring

semester in 1996. Each of his seven claims traces back to the debt incurred during this period, but the claims differ significantly in their specific factual underpinnings.

A. *Mr. Johnson's 1996 Direct Loans*

In the spring of 1996, Mr. Johnson registered for three courses at the university: "Introduction to Writing," "Legal Ethics," and "Litigation." Compl. ¶ 7. To pay for these courses, the university applied $3,600 in federal loans to Mr. Johnson's student account. Compl. ¶ 8. Shortly after the semester began, however, Mr. Johnson withdrew because he was incarcerated. Compl. ¶ 9; *see Johnson v. United States Dep't of Educ.*, 580 F.Supp.2d 154 (D.D.C.2008), *aff'd without opinion*, No. 08–5468, 2009 U.S.App. LEXIS 7793 (D.C.Cir. Apr. 10, 2009). The university credited Mr. Johnson's student account for the tuition for two of the three courses and for one-half of the tuition for the third class, such that he owed the school only $261.00. Compl. ¶ 12. According to the university's financial policies, it was supposed to refund Mr. Johnson's federal loans for this period to the government. Compl. Ex. 4, Attach. B. And indeed, according to its records, the university issued two refunds totaling $2,556 in late January 1996. Compl. Ex. 4, Attach. C.[1] At some point unspecified by plaintiff, the government's Direct Loan Servicing Center notified Mr. Johnson that he owed $3,750.00 (including accrued interest) for his tuition during the spring of 1996. Compl. ¶ 13. From this fact, Mr. Johnson infers that the university never returned the $2,556 to the Department of Education. Compl. ¶ 15 & Ex. 2, at 1.

When Mr. Johnson communicated with the university on the subject in 2011, the school stated that any refund would have been made to the government back in 1996. Compl. Ex. 3. The university gave Mr. Johnson the numbers of two refund checks it claimed to have sent, but it was unable to furnish copies of those checks because it had been fifteen years since Mr. Johnson had withdrawn his enrollment. Compl. Ex. 3, at 2. In March 2011, Mr. Johnson submitted an application to the Department of Education to have his loan discharged pursuant to 34 C.F.R. § 685.216(a)(2)(i), a regulation that provides for the discharge of a student-borrower's obligation that should have been refunded by the school. Compl. ¶ 18.[2] The Department denied the application on April 1, 2011, on the ground that the pertinent tuition amount had been refunded by the university at the time of withdrawal. Compl. Ex. 5.

B. *Mr. Johnson's 2004 Consolidation Loan*

On April 22, 2004, Mr. Johnson applied for a loan through the Federal Direct Consolidation Loan Program. *See* Compl. Ex. 7. This program lends money to individuals to enable them to consolidate disparate federal educational loans into a single debt instrument. *See* 34 C.F.R. § 685.100(a)(4). As part of the application, Mr. Johnson had to list the loans he wished to consolidate. The bulk of his debt derived from two loans from Sallie Mae, presumably incurred to fund his studies at the University of Maryland, University Col-

---

1. The discrepancy between the amount of the pertinent loan and the refund is not explained by the pleadings.

2. The regulation provides in pertinent part:
 (2) Unpaid refunds in open school situations.
 (i) In the case of a school that is open, the Secretary discharges a former or current borrower's (and any endorser's) obligation to repay that portion of a Direct Loan equal to the refund that should have been made by the school under applicable law and regulations, including this section, if—
 (A) The borrower (or the student on whose behalf a parent borrowed) is not attending the school that owes the refund;
 (B) The borrower has been unable to resolve the unpaid refund with the school; and
 (C) The Secretary is unable to resolve the unpaid refund with the school within 120 days from the date the borrower submits a complete application in accordance with paragraph (c)(1) of this section regarding the unpaid refund. Any accrued interest and other charges associated with the unpaid refund are also discharged.
 (ii) For the purpose of paragraph (a)(2)(i)(C) of this section, within 60 days of the date notified by the Secretary, the school must submit to the Secretary documentation demonstrating that the refund was made by the school or that the refund was not required to be made by the school.
 34 C.F.R. § 685.216(a)(2).

lege. Compl. Ex. 7. On April 28, 2004, Sallie Mae certified that Mr. Johnson owed it $20,665.70. Compl. Ex. 9.[3] Sallie Mae and Mr. Johnson then reached a compromise by which Mr. Johnson settled his debt with Sallie Mae by agreeing to pay $18,000. Compl. Ex. 6. On December 13, 2004, the government's Direct Loan Servicing Center approved Mr. Johnson's application and used the funds to pay off his prior educational loans, disbursing $20,747.02. Compl. ¶ 32 & Ex. 7.

Mr. Johnson presents two claims respecting the consolidation loan. First, he alleges that the government overpaid Sallie Mae. Compl. ¶¶ 29–35. He contends that under the loan consolidation agreement, "[i]f the amount [the agency] provides to [the borrower's] holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s), [the borrower] understands that the holder will refund the excess to [the agency] for application against the outstanding balance of this loan." Compl. Ex. 1, at 3. In late 2010, Mr. Johnson notified the government's Direct Loan Servicing Center of its alleged overpayment to Sallie Mae and asked it to apply this amount to the balance of his consolidated loan. Compl. ¶ 33; Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 7. He avers that the Center refused to do so, but he has not provided the pertinent communication (if any) from the Center.

Second, Mr. Johnson claims that Sallie Mae was not the rightful recipient of any funds from the consolidation loan. Compl. ¶¶ 36–61. This averment may be moot. In a separate lawsuit between Sallie Mae and Mr. Johnson, Sallie Mae disclaimed ever receiving payment from the Federal Direct Loan Program pursuant to Mr. Johnson's consolidation loan. Compl. Ex. 10. Sallie Mae stated that "the Department of Education made the consolidation payment to United Student Aid Funds, Inc., the guarantor of [Mr. Johnson's] student loans, not to Sallie Mae." Compl. Ex. 10, at 1. Moreover, many

years prior, in 1997, Sallie Mae sent Mr. Johnson a letter informing him that it had filed a claim on his student loans and transferred them to the guarantor, United Student Aid Funds. Compl. Ex. 11, at 7. Mr. Johnson claims that the letter was sent to an address where he did not live, and consequently he did not receive it until February 9, 2011, in connection with his lawsuit against Sallie Mae. Pl.'s Opp'n at 8 n. 2.

On May 10, 2011, Mr. Johnson told the Direct Loan Servicing Center that it had erroneously paid Sallie Mae back in 2004 and requested that the government recover the money it had given to Sallie Mae and cancel the consolidation agreement. Compl. Ex. 11, at 3–4. The Center has not done so.

### C. The Administration of the Consolidation Loan

In addition to questioning the proper amount and recipient of his consolidation loan, Mr. Johnson alleges various errors in the administration of that loan. Compl. ¶¶ 62–93. He avers that on multiple occasions, he sent the Direct Loan Servicing Center a check which the Center did not deposit. Compl. ¶¶ 75–82. Most recently, Mr. Johnson included with his check a letter stating that, if the Loan Servicing Center failed to process the check, it agreed to forfeit the right to collect the face-value of that check. Compl. ¶¶ 83–85 & Ex. 16. Mr. Johnson alleges that the Loan Servicing Center did not deposit the check. Compl. ¶ 87. Rather, he says the Center has treated all of these failed payments as delinquent and has continued to assess interest against Mr. Johnson on the amounts he has attempted to pay. See, e.g., Compl. ¶ 78.

Finally, Mr. Johnson also avers that the Center has improperly calculated the interest that he owes. Compl. ¶¶ 90–93. The promissory note attendant to his consolidated loan provides that the Department of Education may capitalize interest that accrues but is not paid when due. Compl. Ex. 1, at 2. Mr.

---

3. A little over two weeks later, on May 13, 2004, Sallie Mae represented to Mr. Johnson that his debt totaled $20,956.80. Compl. Ex. 6. This discrepancy is not fully explained in the pleadings or exhibits. In the fifteen days between these two calculations, Mr. Johnson's debt to Sallie

Mae apparently increased by $291.10. The records suggest, however, that $58.51 of this amount was attributable to additional interest, and the remaining $232.59 was due to additional collection costs. Compare Compl. Ex. 6, with Compl. Ex. 9.

Johnson claims that the Department has capitalized interest before it was due. Compl. ¶ 92. He has not provided additional facts regarding this claim.

### D. *Proceedings in Other Courts*

This is Mr. Johnson's fifth attempt to convince an adjudicatory body to erase all or part of his student debt. He first sued in the United States District Court for the District of Columbia to compel the Department of Education to cancel his loans. *See Johnson v. United States Dep't of Educ.*, 580 F.Supp.2d 154. Mr. Johnson alleged that the agency had denied his application for a loan discharge in violation of the Administrative Procedure Act and the Higher Education Act. *Id.* at 155. The district court granted summary judgment to the agency, upholding its decision as "consistent with the applicable regulation." *Id.* at 157. Unsatisfied with this outcome, Mr. Johnson appealed the judgment to the United States Court of Appeals for the District of Columbia Circuit and filed motions to have the case remanded for consideration of additional evidence—all without success. *See Johnson v. Duncan*, 746 F.Supp.2d 163, 166 (D.D.C.2010), *appeal dismissed*, No. 10–5375, 2011 WL 186574 (D.C.Cir. Jan. 19, 2011).

In 2010, Mr. Johnson filed a second lawsuit in the United States District Court for the District of Columbia "seeking the same relief that he sought in his [earlier] suit." *Johnson v. Duncan*, 746 F.Supp.2d at 167. His complaint reiterated the counts from his previous action and asserted a new legal theory premised on the Fifth Amendment. *Id.* The court granted the government's motion to dismiss on the grounds of *res judicata* and collateral estoppel. *Id.* at 168.

Undeterred, Mr. Johnson filed a third lawsuit—this one in the United States District Court for the Northern District of Texas—against the government contractor responsible for servicing his loan. *Johnson v. Affiliated Computer Servs., Inc.*, No. 3:10–CV–2333–B, 2011 WL 4011429, at *1 (N.D.Tex. Sept. 9, 2011), *appeal pending*, No. 12–10184 (5th Cir.). He claimed that the company failed to process properly his request for a loan discharge, *id.*, and sought relief under seven separate causes of action, *id.* at *3.

The court granted the defendant's motion to dismiss all counts, *id.* at *10, and excoriated Mr. Johnson for "burdensome, frivolous, and reprehensible" conduct in the litigation, *id.* at *2.

In addition to these federal suits, Mr. Johnson has looked to a local tribunal for relief from his student debt. In 2006, he brought an action before a Maryland administrative law judge disputing the $261.00 he owed for his final semester at the university. *Johnson v. Central Collection Unit, Dep't of Budget & Mgmt.*, DBAM–CCU–01–06–47614 (Md. Office of Admin. Hr'gs Apr. 9, 2007) (Compl. Ex. 4, Attach. A). The assigned administrative law judge found that Mr. Johnson was responsible for this sum, plus collection costs. *Id.* at 6.

### E. *Proceedings in this Court*

Mr. Johnson filed his complaint in this court on December 27, 2011, stating seven claims against the government. Five of these counts are for breach of contract, and the other two allege negligence and violation of the Administrative Procedure Act. On February 27, 2012, the government filed a motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims. Mr. Johnson responded by submitting both an opposition and a motion to transfer the case to the United States District Court for the District of Columbia. Both motions have been fully briefed by the parties and are now ready for disposition.

## STANDARDS FOR DECISION

A "court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed.Cir.2004) (internal quotation marks omitted) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed.Cir.2002)). In addressing a motion to dismiss for lack of subject matter jurisdiction, the court will "normally consider the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974),

*abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The burden of establishing the court's jurisdiction rests upon the party seeking to invoke it, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), and this burden is not satisfied until proven by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748.[4]

■ The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act waives sovereign immunity and enables a plaintiff to sue the United States for money damages, *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), but it does not itself create a substantive right to monetary relief from this court, *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Martinez v. United States*, 333 F.3d 1295, 1302–03 (Fed.Cir.2003) (en banc). "A substantive right must be found in some other source of law." *Mitchell*, 463 U.S. at 216, 103 S.Ct. 2961. Accordingly, to satisfy the jurisdictional requirements of the Tucker Act, the plaintiff must point to an independent, substantive source of law that mandates payment from the United States for the injury suffered.

■ Ordinarily, "[i]f a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law." *Gray v. United States*, 69 Fed.Cl. 95, 98 (2005) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed.Cir. 1985)). Nonetheless, in some cases, transfer may be an option. *Gray*, 69 Fed.Cl. at 98.

Pursuant to 28 U.S.C. § 1631, if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer [the] action … to any other such court in which the action … could have been brought at the time it was filed." In effect, three prerequisites exist for transferring a case: "(1) the transferor court lacks jurisdiction; (2) the action could have been brought in the transferee court at the time it was filed; and (3) transfer is in the interest of justice." *Zoltek Corp. v. United States*, 672 F.3d 1309, 1314 (Fed.Cir.2012) (en banc).

## ANALYSIS

### A. Plaintiff's Non–Contract Claims

Mr. Johnson's complaint contains two counts that are not for breach of contract. Count one seeks damages for agency action that allegedly contravenes the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, and possibly Section 437 of the Higher Education Act Amendments of 1986, 20 U.S.C. § 1087. Compl. ¶¶ 6–22. Count four requests damages due to the negligence of the agency.

### 1. Alleged violations of the APA and Higher Education Act.

Mr. Johnson alleges that the Department of Education acted arbitrarily and capriciously in denying his request for a loan discharge under 34 C.F.R. § 685.216(a)(2)(i). Compl. ¶ 22. The government responds that this court cannot hear claims under either the APA or the Higher Education Act, because they are not money-mandating statutes.

■ As discussed *supra*, plaintiff cannot establish jurisdiction simply by alleging a violation of law; he must identify a *money-mandating* statute or regulation that the government has purportedly contravened. *Ferreiro v. United States*, 501 F.3d 1349, 1351–52 (Fed.Cir.2007) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.

---

4. Mr. Johnson has appeared *pro se*, and the submissions of such litigants are traditionally held to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)).

"This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States*, 59 Fed.Cl. 497, 499, aff'd, 98 Fed.Appx. 860 (Fed.Cir.2004) (per curiam); *see also Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir.1995).

2005) (en banc in relevant part)). A money-mandating source of law is one which "can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damage sustained." *Mitchell,* 463 U.S. at 217, 103 S.Ct. 2961 (quoting *Testan,* 424 U.S. at 400, 96 S.Ct. 948). In determining whether a law is money-mandating, the court "must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *United States v. Navajo Nation,* 537 U.S. 488, 506, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003). Such laws require a payment to a person under specific conditions, typically indicated by language indicating that the individual is "entitled" to compensation or that the government "shall" pay him or her. *Doe v. United States,* 463 F.3d 1314, 1325 (Fed.Cir.2006); *Agwiak v. United States,* 347 F.3d 1375, 1380 (Fed.Cir.2003).

■ It is well settled that the APA is not a money-mandating statute. This is because "the APA does not authorize an award of money damages at all; to the contrary, [S]ection 10(a) of the APA, 5 U.S.C. § 702, specifically limits the Act to actions 'seeking relief other than money damages.'" *Wopsock v. Natchees,* 454 F.3d 1327, 1333 (Fed.Cir.2006); *see also Fulbright v. United States,* 97 Fed. Cl. 221, 227 (2011) ("[T]he APA is, by definition, not a money-mandating statute." (citing *Martinez,* 333 F.3d at 1313)), *appeal dismissed,* 464 Fed.Appx. 871 (Fed.Cir.2012). Consequently "the Court of Federal Claims lacks APA jurisdiction." *Martinez,* 333 F.3d at 1313 (citing *Murphy v. United States,* 993 F.2d 871, 874 (Fed.Cir.1993)).

■ Nor would Mr. Johnson's claim have greater success if framed under the Higher Education Act or its regulations. The statute provides that, under certain conditions, the Secretary of Education "shall discharge the borrower's liability on the loan ... by repaying the amount owed on the loan." 20 U.S.C. § 1087(c)(1). Yet this provision "cannot fairly be read as conferring upon a ... borrower 'a substantive right to recover money damages against the United States.'" *Faison v. United States,* 102 Fed.Cl. 637, 642 (2012) (quoting *Spehr v. United States,* 51

Fed.Cl. 69, 93 (2001), *aff'd per curiam,* 49 Fed.Appx. 303 (Fed.Cir.2002)) (interpreting identical language in 20 U.S.C. § 1087(a)(1)). The statute merely instructs the Secretary of Education to discharge the borrower's debt, which is not the same as paying him. *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Department of Homeland Sec.,* 490 F.3d 940, 945 (Fed.Cir.2007) ("[T]here is a substantive difference between a plaintiff seeking the return of money it already paid the government and a plaintiff never having to pay the government in the first place.").

■ The corresponding regulation, 34 C.F.R. § 685.216, likewise does not serve as a money-mandating source of law for Mr. Johnson. It does indicate that a borrower could be eligible for a reimbursement if the amount discharged proved to be greater than the outstanding balance of his loan. *See* 34 C.F.R. § 685.216(b)(1) ("If the borrower receives a discharge of a portion of a loan ..., the borrower is reimbursed for any amounts paid in excess of the remaining balance of the loan ... owed by the borrower at the time of discharge."); *cf. Lankster v. United States,* 87 Fed.Cl. 747, 752–57 (2009) (addressing regulations providing for refund of loan amounts paid after the borrower becomes totally and permanently disabled). However, Mr. Johnson has not alleged that he paid an amount greater than the loan balance. In fact, the amount he disputes with the university is a fraction of the original principal of the loan. *See* Compl. Ex. 7. In short, Mr. Johnson has failed to make "a nonfrivolous assertion that [he] is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.,* 525 F.3d 1299, 1307 (Fed.Cir.2008). Thus count one of the complaint fails for lack of subject matter jurisdiction.

### 2. *Alleged negligence.*

■ The fourth count of Mr. Johnson's complaint seeks damages on the grounds that the agency negligently paid Sallie Mae in the process of consolidating his loans. Compl. ¶¶ 36–49.[5] The Tucker Act confines

---

5. As noted previously, an exhibit appended to the

complaint indicates that Sallie Mae received no

this court's jurisdiction to "cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Plaintiff's allegation of negligence is an archetypal tort claim. *See, e.g., Naskar v. United States*, 82 Fed.Cl. 319, 321 (2008) ("Because plaintiff's claim is for damages due to negligence, it sounds in tort and the Court of Federal Claims does not have jurisdiction over it." (citing *Souders v. South Carolina Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir.2007))). Accordingly, the court also lacks jurisdiction over count four.

### B. *Plaintiff's Contract Claims*

The rest of Mr. Johnson's claims are for breach of his 1996 and 2004 loan agreements with the Department of Education. The government challenges the court's jurisdiction over these claims on the grounds that they either are untimely or are not requests for relief in the form of money damages.

#### 1. *Statute of limitations.*

Under the statute of limitations applicable to claims under the Tucker Act, a claim must be brought within six years from when the cause of action accrued. 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). The parties dispute when plaintiff's claims accrued for counts three and five of his complaint. In count three, Mr. Johnson alleges that the agency overpaid the lender $2,747.02 during his loan consolidation process. He further avers that if the amount sent by the government under the Federal Direct Consolidation Loan Promissory Note exceeded the amount needed to pay off the balances of his selected loans, then the excess should have been refunded to the government and applied against the outstanding balance of his consolidated loan. Compl. ¶ 30. The government argues that any claim Mr. Johnson might have in this regard accrued in December 2004, when the agency informed plaintiff that it paid $20,747.02 instead of $18,000 per Mr. Johnson's compro-

mise agreement with Sallie Mae. Def.'s Mot. to Dismiss at 15–16. Mr. Johnson contends that his claim did not accrue until he asked the government to refund the excess amount and the government refused on November 10, 2010. Pl.'s Opp'n at 7.

 Mr. Johnson's argument respecting accrual is without merit. The six-year countdown starts once "all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed.Cir.2012) (emphasis omitted) (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988)); *see also Martinez*, 333 F.3d at 1303 (holding that a claim accrues when "all events have occurred ... [that] entitl[e] the claimant to demand payment and sue here for his money" (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct.Cl.1966))). Here, the government overpaid Mr. Johnson's loan-holder in December 2004. At that point, Mr. Johnson's claim accrued and he was entitled to demand relief. In other regulatory and statutory regimes, a plaintiff might be obliged to pursue administrative remedies, such as asking the agency for a refund, before bringing suit. *Cf. Samish Indian Nation v. United States*, 419 F.3d 1355, 1369 (Fed.Cir.2005) ("If a necessary element to a claim must be established in a different forum, the claim will not accrue for § 2501 until that element is finally established in the other proceeding."). Here, however, there was no requirement that Mr. Johnson first approach the Department of Education prior to filing his complaint. The claim in count three accrued some seven years before the present lawsuit commenced, and so it is barred by the statute of limitations.

 The accrual date for the claim in count five is not as straightforward. In that count, Mr. Johnson alleges that the Department of Education improperly paid Sallie Mae during the 2004 consolidation process.

payments from the Department in connection with the consolidation. *See supra*, p. 89 (quoting

Compl. Ex. 10, at 1).

Mr. Johnson contends that it was not until February 9, 2011 that he learned that Sallie Mae was the improper recipient of those funds. *See* Pl.'s Opp'n at 8 n. 2. The government responds that Mr. Johnson should have known that he was no longer indebted to Sallie Mae sometime after February 13, 1997, the approximate date when Sallie Mae transferred its claim on plaintiff's loans to United Student Aid Funds, Inc., the guarantor of the student loans. Def.'s Reply at 5–6; *see also* Compl. Ex. 10.

In determining when Mr. Johnson knew or should have known of the transfer of his debt, the court employs an objective standard. *Shoshone Indian Tribe*, 672 F.3d at 1030 ("The question whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed.Cir.1995))). As the party bearing the burden of establishing subject matter jurisdiction, it is not enough for Mr. Johnson to disclaim knowledge of the relevant events; he must "demonstrate that [he] could not have reasonably known the facts fixing the [g]overnment's alleged liability" by a preponderance of the evidence. *Mildenberger v. United States*, 643 F.3d 938, 945 (Fed.Cir.2011).

Mr. Johnson has not carried this burden. A reasonable person would have known that Sallie Mae was no longer the loan-holder well before the 2004 consolidation loan was entered. The court acknowledges Mr. Johnson's averment that he never received the letter sent by Sallie Mae on February 13, 1997, which would have informed him that United Student Aid Funds was his new creditor. *See* Pl.'s Opp'n at 8 n. 2. Nonetheless, this still leaves a period of over seven years in which Mr. Johnson apparently made no attempt to make a payment, discuss his ability to pay, or otherwise confirm the entity to which he still owed the debt. Indeed, so far as can be gleaned from the pleadings and briefs, Mr. Johnson simply ignored his student loans altogether during this seven-year period. This is hardly the behavior of a reasonable person. *Cf. Diamond v. Davis*,

680 A.2d 364, 370 (D.C.1996) ("[A] cause of action accrues . . . when the plaintiff . . . is deemed to be on inquiry notice because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such an investigation, if conducted, would have led to actual notice."). Mr. Johnson has not demonstrated that he "could not have reasonably known the facts" surrounding the ownership of his debt prior to the consolidation agreement. *See Mildenberger*, 643 F.3d at 945. Additionally, the Federal Direct Consolidation Loan Verification Certificate issued April 28, 2004, shows a payoff amount of $20,665.70, not $18,000. Compl. Ex. 9. Consequently, his claim for count five accrued over seven years before Mr. Johnson filed suit in this court.

2. *Availability of monetary damages.*

Under the Tucker Act, the court's jurisdiction extends only to cases concerning "actual, presently due money damages from the United States." *Todd v. United States*, 386 F.3d 1091, 1093 (Fed.Cir.2004) (quoting *Testan*, 424 U.S. at 398, 96 S.Ct. 948). The Tucker Act provides that limited equitable relief may be available in narrow circumstances if it is "incidental to and collateral to a claim for money damages." *Bobula v. United States Dep't of Justice*, 970 F.2d 854, 859 (Fed.Cir.1992) (citing 28 U.S.C. § 1491(a)(2)); *Geneva Rock Prods., Inc. v. United States*, 100 Fed.Cl. 778, 785 (2011) ("[T]his court's jurisdiction . . . primarily concerns claims for liquidated or unliquidated damages against the United States, with equitable relief allowed only in expressly specified instances." (internal quotation marks and citation omitted)). Indeed, since the court's inception, the general rule has been that "the only judgments which the Court of Claims [is] authorized to render . . . are judgments for money found due from the government to the petitioner," *United States v. Alire*, 73 U.S. (6 Wall.) 573, 575, 18 L.Ed. 947 (1867), with exceptions stated in later-enacted specific statutes.

In its motion to dismiss, the government contends that none of Mr. Johnson's seven claims fall within the ambit of the Tucker Act because they are not for monetary damages.

The government argues that Mr. Johnson is not seeking payment from the U.S. Treasury but rather is requesting discharge of all or part of his debt to the Department of Education. Def.'s Mot. to Dismiss at 8–10. Though such a claim may bear a superficial resemblance to monetary damages, the government avers that it amounts to equitable relief. *Id.*[6] Mr. Johnson responds that he is entitled to monetary damages for the government's breach of contract. Pl.'s Opp'n at 3. He argues that his claims would result in money being paid from the public fisc, even if only to offset the disputed debt. *Id.* at 4.

Mr. Johnson correctly notes that "when a breach of contract claim is brought in the Court of Federal Claims under the Tucker Act, the plaintiff comes armed with the presumption that money damages are available." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed.Cir.2011). However, this presumption is not always borne out, for "[t]he government's consent to suit under the Tucker Act does not extend to every contract." *Id.* (alteration in original) (quoting *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed.Cir.2008)). The central inquiry is still whether the *particular* contract in question would give rise to monetary damages. *See Tallacus v. United States*, 99 Fed. Cl. 235, 238 (2011) (finding no jurisdiction where "the [g]overnment's breach of the settlement agreement [did] not create a right to recovery of money damages").

▮ Looking to the substance of the complaint, Mr. Johnson is not seeking "actual, presently due money damages from the United States." *Todd*, 386 F.3d at 1093 (quoting *Testan*, 424 U.S. at 398, 96 S.Ct. 948). Although he alleges a medley of contractual breaches by the Department of Education, Mr. Johnson never suggests that he has sustained any injury that would require the government to pay him damages. Indeed, his sole grievance is that the government has illegally increased his preexisting debt. Whether or not this is so, Mr. Johnson will

not have a cause for monetary damages until he actually pays off some part of that allegedly improper debt. *Marathon Oil Co. v. United States*, 16 Cl.Ct. 332, 337 (1989) ("[T]o the extent [plaintiff's] claims seek consideration by the court of some portion of the money requested by [the agency] that has not been paid by [plaintiff,] they seek a declaratory judgment."). Currently, even if Mr. Johnson were to prove that a portion of his debt is unjustified, he would still owe a substantial outstanding balance to the Department of Education. Mr. Johnson consequently has no grounds to demand a refund of payments already made and thus no claim for monetary damages. *See Valentino v. United States Dep't of Educ.*, No. 09cv0006 JM(LSP), 2009 WL 2985686, at *3 (S.D.Cal. Sept. 16, 2009) (finding plaintiff failed to state a claim for damages where "the record demonstrates that [p]laintiff still owes substantial amounts on the loans and that the treasury will be the net beneficiary upon receipt of outstanding principal and interest payments").

The most Mr. Johnson can hope to achieve in this action is to obtain a discharge of the allegedly improper portion of his debt. And indeed, he requests such relief in his complaint. Compl. Prayer for Relief ¶ a (asking the court to "[e]nter a declaratory judgment that ... the [d]efendants are required to discharge the [p]laintiff's obligation to repay [a] portion of the disputed Direct Loan"). However, this remedy is beyond the court's jurisdiction. The Federal Circuit has unambiguously held that cancellation of debt does not constitute monetary damages. *See Gonzales & Gonzales Bonds*, 490 F.3d 940. In *Gonzales & Gonzales Bonds*, the plaintiff purportedly sought "monetary damages, in the form of cancellation of debt" represented by bonds held by a federal agency. *Id.* at 942 (emphasis omitted). The court found that, notwithstanding the language of the complaint, the plaintiff was actually seeking "either specific performance of [the agency's]

---

**6.** In this respect, the government contends that Mr. Johnson's prayer for relief asks only for declaratory judgment. Def.'s Mot. to Dismiss at 10. More accurately, however, Mr. Johnson's prayer for relief mixes requests for equitable and monetary relief. *E.g.*, Compl. Prayer for Relief

¶ b (asking the court to "[e]nter a declaratory judgment that the [d]efendants breached their contractual obligations ... and enter judgment in favor of the [p]laintiff for all amounts owed to the [p]laintiff as a result of the breach"); *see also* Compl. ¶¶ 28, 35, 49, 61, 89, 93.

contractual obligations ... to cancel the bonds, or declaratory and injunctive relief determining that [the agency] breached the bonds and precluding the government from collecting the debts owed thereunder." *Id.* at 945. Because the plaintiff would only be "relieved of an[ ] obligation to pay the government," its claim was not for monetary damages and so fell outside the purview of the Tucker Act. *Id.; see also Valentino,* 2009 WL 2985686, at *2–4 (applying *Gonzales & Gonzales Bonds* in the context of student loans and the Little Tucker Act). Like the plaintiff in *Gonzales & Gonzales Bonds,* Mr. Johnson can only obtain a cancellation of debt, not actual payment from the treasury. Consequently, this court lacks jurisdiction over counts two, five, and six of his complaint.

### C. Plaintiff's Motion to Transfer

Mr. Johnson has also filed a motion to transfer his suit to the United States District Court for the District of Columbia, which is opposed by the government. *See* Pl.'s Mot. to Transfer; Def.'s Resp. to Pl.'s Mot. to Transfer. In ruling on a motion to transfer, the court must weigh whether the case satisfies the three prerequisites of 28 U.S.C. § 1631. The first factor—"the transferor court lacks jurisdiction"—is readily satisfied in this instance, for the reasons discussed *supra. Zoltek,* 672 F.3d at 1314.

Mr. Johnson's motion falters on the second requirement that "the action could have been brought in the transferee court at the time it was filed." *Zoltek,* 672 F.3d at 1314. Plaintiff would not have been able to bring counts three and five in district court for the same reason it could not do so in this court. There is a six-year statute of limitations for non-tort actions brought against the United States in district court. 28 U.S.C. § 2401(a). Because plaintiff's claims regarding the government's alleged payment to Sallie Mae accrued at least by 2004, the district court's statute of limitations expired well before December 2011, when Mr. Johnson filed his case here. Similarly, he could not have brought his tort claim in district court at that time. The statute of limitations for tort claims is just two years. 28 U.S.C.

§ 2401(b); *see, e.g., Auger v. United States,* 80 Fed.Cl. 422, 422 (2008).

Mr. Johnson's remaining claims also fail to satisfy the third criterion, *i.e.,* that the "transfer [be] in the interest of justice." *Zoltek,* 672 F.3d at 1314. In considering this last prerequisite, courts emphasize that a plaintiff should have the opportunity to have his nonfrivolous claims heard on the merits. *Galloway Farms, Inc. v. United States,* 834 F.2d 998, 1000 (Fed.Cir.1987). In this respect, courts have found a "compelling reason for transfer" where the plaintiff "will be time-barred if his case is dismissed and thus has to be filed anew in the right court." *Texas Peanut Farmers v. United States,* 409 F.3d 1370, 1374 (Fed.Cir.2005) (quoting *Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir. 1999)). Here, however, the interests of justice will not be furthered by transferring Mr. Johnson's claims to the United States District Court for the District of Columbia. Mr. Johnson has already brought two actions there in an effort to obtain a discharge of his student loans. *See Johnson v. United States Dep't of Educ.,* 580 F.Supp.2d 154; *Johnson v. Duncan,* 746 F.Supp.2d 163. He has had his day in court twice over. Consequently, the court finds that Mr. Johnson has not satisfied the prerequisites for transfer.

### CONCLUSION

For the reasons stated, the government's motion to dismiss for lack of subject matter jurisdiction is GRANTED, and plaintiff's motion to transfer is DENIED. The clerk shall enter judgment accordingly.

It is so ORDERED.